ORLEANS,
*March,*
1841.

Pinney
*v.*
Bugbee.

</div>

The judgment of the county court is reversed.

---

## JABEZ PINNEY *v.* HARRIS BUGBEE.

Three persons, as principals, gave their joint and several note ; one is not a
competent witness for another of the makers when sued severally on
the note, being interested by being bound to contribute to the costs as
well as to the debt.

If one of such signers deliver to the payee other notes, the avails of which
the payee agrees to indorse on his note when collected, still, said avails
may, before such indorsment, be, by consent of said signer, applied after-
wards to other debts of his, notwithstanding, by a private contract, said
signer had agreed with the other signers to pay this note, unknown to
the payee.

The agreement to wait on a joint debtor for his part of a debt, constitutes
no defence to an action for said debt.

ASSUMPSIT, on two promissory notes, dated 12th March,
1834, payable to Wm. McGregor or order, and indorsed to
plaintiff for collection, said notes signed by defendant, Ethan
H. Nichols and Miron S. Kimball, for one hundred dollars
each.

Trial by jury.

Plea, the general issue with notice under the statute, that,
previous to the notes being indorsed to plaintiff, McGregor
received of E. H. Nichols and Kimball certain notes against
one Lewis Gilman in payment of the notes in question, *pro-
vided they were paid,* and that McGregor agreed to suspend
the collection of the notes against the defendant, until it was
ascertained whether the Gilman notes were collected.   It
appeared, in evidence, that, at the date of the notes in ques-
tion, McGregor sold to the defendant and Kimball and Nich-
ols a mill, in payment of which these and other notes were
executed and secured by mortgage on the mill.   In 1836,
the defendant sold out his share of the mill to Nichols, who
indemnified defendant from liability on the mill notes, which

indirectly proved insolvent. On the 5th of March, 1838, Nichols and Kimball sold the mill to said Gilman, in payment of which Gilman executed his notes to Nichols and Kimball. On the 18th of the following April, Nichols and Kimball divided the Gilman notes, and McGregor received of Kimball two of the notes, and gave a receipt for them of the following tenor.

' Received of Miron S. Kimball two promissory notes, giv-
' en for one hundred dollars each, the first payable in two
' years from date, the second payable in four years from
' date, and made payable to Ethan H. Nichols and Miron S.
' Kimball, dated March 5, 1838, both given on interest an-
' nually, signed by Lewis Gilman, to account for as follows,
' viz : Whereas I hold, against said Kimball, three promisso-
' ry notes, all dated March 12, 1834, given for one hundred
' dollars each, on interest, and made payable to Wm. Mc
' Gregor, signed by Ethan H. Nichols, Harris Bugbee and
' Miron S. Kimball, the first due 12th March, 1838, the sec-
' ond due March 12th, 1839, and the third due March 12,
' 1840. Of the last described notes Miron S. Kimball is to
' pay me the one half, amounting, principal and interest, to
' one hundred and eighty-six dollars, the 12th March, 1838.
' Now I hereby agree that if said notes are paid by said Gil-
' man to me, I am to indorse the one half of the last describ-
' ed note satisfied ; if not paid, then said Kimball is to pay
' me and give up this receipt, by my giving up said Gilman
' notes on demand.                    WM. MCGREGOR.'

On the 17th September, 1838, McGregor receipted to Nichols four of the Gilman notes, in the form following ;—

' Received of Ethan H. Nichols four notes against Lewis
' Gilman, all dated March 5th, 1838, and all with interest
' annually, one for the sum of fifty dollars, payable in six
' years from date, one for the sum of one hundred dollars,
' payable in five years from date, one for the sum of one
' hundred dollars, payable three years from date, and the
' other for the sum of one hundred dollars, payable in one
' year from date, with fifty dollars indorsed on the last de-
' scribed note, July 19, 1838, which I promise to account
' for on a note I hold against said Nichols of this date, for
' ninety-eight dollars and fifteen cents, and the balance on
' said notes I hold against said E. H. Nichols, Harris Bug-

'bee and Miron S. Kimball, if said notes against said Gilman
'are paid. Said notes against Gilman are payable to said
'Nichols and Miron S. Kimball, or their order.

<div align="right">Wm. McGregor.'</div>

The said Kimball was admitted as a witness and testified in favor of the defendant, though objected to by the plaintiff.

The plaintiff offered evidence tending to prove that Nichols had treated the Gilman notes as his private property, since the division with Kimball, by turning them out to secure his private debts, previous to McGregor's receiving them; that Nichols had sold lands, by deed of warranty, which came into the hands of McGregor; that there was a mortgage of about one thousand dollars on said lands, belonging to Nichols to pay; that, the same day on which Mc Gregor receipted the Gilman notes, Nichols, being poor and about leaving the country, gave up to McGregor said receipt, and turned out the notes, specified in the receipt, to Mc Gregor, to secure him on said mortgage, which he must pay to get a title to said lands, which evidence was excluded by the court.

There was no evidence tending to prove that the defendant knew of the sale of the mill to Gilman, or that the Gilman notes were turned out to McGregor, until after he had taken up the receipt and the notes to secure him against the mortgage.

It appeared, in evidence, that the Gilman notes had been paid to McGregor as they fell due.

The plaintiff requested the court to charge the jury, that the terms of the receipt to Nichols, of the Gilman notes, did not suspend the right of action on the notes against the defendant, the Gilman notes not being paid when the suit was commenced. But the court refused so to charge the jury, and instructed them that the right of action, on the notes sued, was suspended until it was ascertained whether the Gilman notes were collectable.

The jury returned a verdict for the defendant, and the plaintiff excepted to the decisions and charge of the county court.

*J. R. Skinner,* for plaintiff, contended that Kimball ought not to have been admitted as a witness, as he and the other

signers of the notes are all liable in equal proportion to pay the whole amount of the notes by them executed, and Kimball would be liable to contribute his proportion to the defendant, not only of the debt, but of the costs which the plaintiff might recover in this suit; and to this point, he cited 1 Swift's Dig. 743. *Jones* v. *Brooke*, 4 Taunt. 464. 2 Stark. Ev. 751, 299, note p. *Beach* v. *Swift*, 2 Conn. R. 269. *Barnwell* v. *Mitchell*, 3 Id. 101. *Pierce* v. *Butler*, 14 Mass. 303. *Ames* v. *Whittington*, 3 N. H. R. 115. *Pike* v. *Blake*, 8 Vt. R. 400.

He further contended that the receipts of McGregor for the notes of Gilman did not operate to prevent the collection of the notes in suit until it was ascertained whether the notes against Gilman were collectable or not; for, by the division of the Gilman notes between Nichols and Kimball, they became the separate property of each, and, as such, each had the entire control of his own; hence, so much of Nichols' share might be pledged by him to McGregor, as is specified in the receipt to Nichols, for the security of the note for $98.15, and it appears, from this receipt, that the first appropriation of the proceeds of the notes, received as security, was to be applied in payment of the note for $98.15. He also insisted that the notes, receipted by McGregor, were received as collateral security, only, and that the receiving of collateral security from one of two makers of a note, does not suspend the right of action on the note, even when the defendant signs as surety, and to this point he cited *Twopenny* v. *Young*, 3 B. & C. 203, (10 C. L. R. 54.) *Solly* v. *Forbes*, 2 B. & B. 38, (6 C. L. R. 11.)

He further contended that the evidence, offered by the plaintiff and rejected by the county court, should have been admitted; that the Gilman notes, by the division of them, became the separate property of the persons among whom they were divided, and, consequently, Nichols could dispose of those belonging to him, as he saw fit.

He admitted that if the defendant had known of the security made by Nichols to McGregor, or been a party to that contract, so that he was thereby induced to relax his vigilance, as to security, the case might merit a different consideration; but nothing of this kind appears in the case;—the

defendant had no knowledge of the transaction and could not have been deceived.

—— *Prentiss* argued for defendant, and insisted

1. That Kimball was an admissible witness for the plaintiff; that he was not called upon to impeach the notes, but to testify to facts occurring subsequently to their execution; that his interest was balanced, and therefore he might testify. If a verdict passed against the defendant, the witness would be liable to contribute. If the verdict were for the defendant, then the witness would be liable for the whole amount of the notes, with a right to call upon the other signers for contribution. And, on this point, he cited *Nichols* v. *Holgate*, 2 Aik. 138. *Smith* v. *Lamb*, 1 Vt. R. 395. *Freemans Bank* v. *Rollins*, 13 Maine R. 202, and cases there cited.

2. That the testimony offered by the plaintiff was properly rejected below, as it was not material to the issue.

3. That the receipts and parol testimony proved either that the Gilman notes were received as collateral security, under an agreement to wait their collection, or that they were substituted for the notes in suit. If they were received as collateral security, under an agreement to await their collection and to apply the proceeds upon the notes in suit, or if they were paid as they became due, a recovery upon the notes in suit was barred; therefore, the decision and charge of the county court was correct.

The opinion of the court was delivered by

COLLAMER, J.—The defendant, and Kimball, and Nichols executed the notes in question, with other notes, all as principals, jointly and severally to McGregor, or order, who sues in the plaintiff's name as indorsee. If the defendant cannot succeed in his defence, Kimball is bound to contribute to the payment of the cost, as the defendant was under no prior or paramount obligation to pay anterior to Kimball. The cost is no more the result of the defendant's neglect to pay than that of Kimball. Kimball is, therefore, directly interested in the result of the suit, and is inadmissible as a witness for the defendant.

After these notes were given, Nichols, for a valuable con-

sideration, agreed to indemnify the defendant therefrom, but this was unknown to the plaintiff. Afterwards Nichols delivered the plaintiff notes against other persons, the avails of which, when collected, he agreed to apply on these notes, but afterwards, on the same day, by agreement with Nichols, they were differently applied. All this was without the knowledge of the defendant. The plaintiff had the right so to deal with Nichols, unless it was in bad faith, and none can be imputed to him until informed of Nichols' agreement with the defendant. The notes left by Nichols were his property, subject to his own disposal and control.

It appears that Kimball became bound to pay one half the notes to McGregor, and he delivered him certain notes for which he gave a receipt, therein agreeing if those notes were paid, he was to indorse the half of his notes, so to be paid by Kimball, satisfied. It seems the court below decided that this amounted to an agreement, by McGregor, to delay on his notes, until the notes so received by him of Kimball became due, and his right of action was thereby suspended. It is extremely questionable whether, from the receipt given by McGregor, any agreement for delay can be fairly extracted, but, if so, it was but an agreement with Kimball, and entirely concerned his half. An agreement *never* to pursue Kimball would constitute no defence for this defendant, unless there were a release, under seal, executed ; (2 Vt. R. 209,) much less will a contract for *temporary* delay. It would be giving a very forced and dangerous construction and effect to that receipt, to hold that McGregor had deprived himself of the power, not only to pursue *Kimball*, but had also lost the power to collect of the defendant, or Nichols, the other part of said notes. It may be said if there was a contract to wait on Kimball for his half, and the plaintiff is permitted to pursue the defendant, and he pays, then the defendant may pursue Kimball and so the contract may be violated. The same might be said of every case where a creditor receives' part from one joint contractor, and agrees to pursue him no further,yet,that is always ruled to be no release of the other debtors, and no defence to any action on the debt. Even the party himself, with whom the contract is so made, cannot use it as a defence to any action in which

his name is necessarily used to recover judgment, in order to collect the debt of the other debtors. 2 Brod. & Bing. 38. 6 Com. Law R. 11.